Argued and submitted January 23, affirmed September 6, 2006

Omar J. GRISBY,
*Appellant,*

*v.*

PROGRESSIVE PREFERRED INSURANCE COMPANY,
*Respondent.*

0305-05057; A128089

142 P3d 531

Dean Heiling argued the cause for appellant. With him on the briefs was Heiling Dwyer & Associates.

Michael A. Lehner argued the cause for respondent. With him on the brief was Lehner & Rodrigues PC.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

Landau, P. J., concurring.

Schuman, J., dissenting.

**ORTEGA, J.**

Plaintiff appeals from a supplemental judgment denying his petition for attorney fees under ORS 742.061 after he prevailed in an action against his insurer for payment of personal injury protection (PIP) benefits. We affirm.

Plaintiff sustained personal injuries when the vehicle that he was driving was rear-ended. He filed a proof of loss statement for payment of his medical expenses under the PIP provisions of his automobile liability insurance policy with Progressive Preferred Insurance Company (Progressive). Progressive informed plaintiff in writing that he had PIP coverage for reasonable and necessary medical expenses directly related to the accident and that Progressive would consent to submitting any dispute as to the amount of benefits to binding arbitration.

Progressive paid plaintiff for time loss and also paid medical bills for plaintiff's treatment by physicians and physical therapists at Kaiser Permanente; however, it refused to pay plaintiff's chiropractic bills in the amount of $4,042 incurred several months later, as not related to the accident. Plaintiff filed a complaint in the circuit court, seeking recovery of the full amount of the chiropractic bills and attorney fees.

The claim was subject to mandatory arbitration. ORS 36.400. The arbitrator ruled in favor of Progressive, and plaintiff requested a trial *de novo*. A jury determined that plaintiff's need for chiropractic treatment was caused by the accident, and the trial court entered judgment for plaintiff. The trial court also awarded plaintiff a portion of his requested costs, but declined to award plaintiff his requested attorney fees of $49,626 for 115 hours of attorney time, and plaintiff appeals, assigning error to that ruling.

■    Plaintiff's entitlement to attorney fees is governed by ORS 742.061, which provides, as pertinent:

> "(1)    Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any

policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"(2)   Subsection (1) of this section does not apply to actions to recover [PIP] benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has *accepted coverage* and the only issue is *the amount of benefits due the insured*; and

"(b)   The insurer has consented to submit the case to binding arbitration."

(Emphasis added.) ORS 742.061(1) states the general rule that an insured who sues on an insurance policy and recovers more than any tender made by the insurer is entitled to reasonable attorney fees. ORS 742.061(2) states an exception to that provision for actions brought to recover PIP benefits if the insurer has consented to submit the case to binding arbitration and "has accepted coverage and the only issue is the amount of benefits due the insured."[1] Plaintiff contends that, despite Progressive's acknowledgment that it had accepted coverage, its refusal to pay the chiropractic benefits on the ground that the treatments were not related to the covered injury was a dispute as to "causation," and, in effect, a denial of coverage. We reject that contention.

As previously noted, Progressive expressly accepted coverage of plaintiff's injury, *i.e.*, it agreed that it must pay plaintiff benefits for his injury under the policy. Indeed, it paid plaintiff such benefits. However, Progressive disputed whether the particular chiropractic treatments were necessitated by that injury. For the reasons explained herein, we conclude that that dispute is not about coverage but rather is "only" about "the amount of benefits due the insured" under ORS 742.061(2)(a), and that the claim is therefore excepted from the attorney fees provisions of ORS 742.061(1).

---

[1] ORS 742.061(3) provides a similar exception in actions to recover uninsured and underinsured motorist benefits when "[t]he insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured."

Under Oregon law, PIP coverage is a required part of every motor vehicle liability policy covering private passenger motor vehicles. ORS 742.520. PIP *coverage* exists when a covered person is injured "resulting * * * from the use, occupancy or maintenance of any motor vehicle," provided that no exclusions are applicable. ORS 742.520(2); ORS 742.530. PIP *benefits* consist of reimbursement for reasonable and necessary medical expenses, loss of earnings, essential services, funeral expenses, and child care benefits. *See* ORS 742.520(3) ("[PIP] benefits consist of payments for expenses, loss of income and loss of essential services as provided in ORS 742.524."); ORS 742.524. *See generally* Irvin E. Schermer and William J. Schermer, *Automobile Liability Insurance 4th* § 80.1 (2004) (describing coverage and benefits under Oregon's PIP statutes).

By accepting *coverage* on a claim for PIP benefits, an insurer acknowledges that it has issued a motor vehicle liability insurance policy that provides PIP benefits up to the policy benefit limits for the person injured as a result of the use, occupancy, or maintenance of the insured vehicle, ORS 742.520(2), and that the event or person is not excluded from coverage under ORS 742.530. As the Supreme Court recently explained, " 'Coverage,' * * * is the universe of *people, vehicles*, and *events* that trigger the insurer's obligation to pay under the policy." *Bergmann v. Hutton*, 337 Or 596, 604, 101 P3d 353 (2004) (emphasis added). An insurer's acknowledgment of coverage means that the insurer agrees that a policy exists that provides coverage for the person, the vehicle, and the event and that the injury for which benefits are sought arose out of the use, occupancy, or maintenance of an insured vehicle. It does not mean, however, that the insurer agrees to pay for every medical service requested under the policy. Under the statutory provisions, Progressive's obligation was to pay PIP benefits for reasonable and necessary expenses caused by the accident. Claim disputes relating to the extent of the insured's damages and the insurer's liability for benefits relate to the amount of benefits and are subject to arbitration. *See* ORS 742.520(6) (disputes concerning the amount of or the denial of PIP benefits are subject to arbitration if mutually agreed).

As occurred here, insurers frequently accept coverage and agree to submit to arbitration any dispute as to benefits. The agreement to submit disputes relating to benefits to arbitration does not make the acceptance of coverage conditional; it merely notifies the insured that, by accepting coverage, the insurer does not waive its ability to dispute its liability for specific benefits. Progressive's acceptance of coverage was not, as the dissent suggests, a hollow act. Rather, that acceptance functioned as an acknowledgment that plaintiff's injury was covered (*i.e.*, that it was the result of the use, occupancy, or maintenance of a covered vehicle); that Progressive must pay benefits due plaintiff under the policy and the statutes, including his reasonable and necessary medical expenses related to the accident, loss of income, and loss of essential services; and that any dispute as to benefits was subject to binding arbitration. Indeed, Progressive paid plaintiff for wage loss and also paid a number of medical bills on his behalf. We reject plaintiff's contention that, because the question whether his treatments were related to the covered injury related to "causation," it necessarily presented an issue of coverage. Plaintiff's *injury* was covered under the policy because it arose out of his use of an insured vehicle. However, the fact that plaintiff had coverage for his injury does not mean that Progessive was required to pay for every treatment he sought. Progressive's later denial of chiropractic treatments as not related to the accident was not a dispute about its coverage of the injury; Progressive simply denied that that particular treatment was necessitated by the covered injury.

Plaintiff contends that, even if Progressive must be treated as having accepted coverage, the dispute regarding payment for the chiropractic treatments was not only about "the amount of benefits" as used in ORS 742.061(2)(a) and that the exclusion therefore was not applicable. We discern the legislature's intention in adopting a statute by examining first its text and context. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). The context includes "other provisions of the same statute and other related statutes," as well as relevant judicial constructions of those statutes. *Id*. at 611. In plaintiff's view, the word

"amount" refers only to issues relating to the dollar amount of benefits due the insured, such as whether a medical bill is excessive or the wage loss has been properly calculated, and that the issue of whether treatment is related to a covered injury is not about "amount." Although the term "amount" commonly refers to quantity, we conclude that, as used in ORS 742.061(2)(a), "amount of benefits" also encompasses other matters relating to the availability of benefits for a particular covered injury, including whether certain medical expenses are related to the injury or whether they are reasonable and necessary.

The context of ORS 742.061(2)(a) bears this out. ORS 742.520(6) provides that disputes about "the amount of [PIP] benefits" are subject to arbitration. In *Foltz v. State Farm Mutual Auto. Ins. Co.*, 326 Or 294, 297-98, 300, 952 P2d 1012 (1998), the Supreme Court held that the issue of whether treatment is "reasonable and necessary" is a dispute as to the "amount" of PIP benefits that is subject to arbitration under ORS 742.520(6). The court's interpretation becomes a part of the statute as if it were written into law at the time of its enactment. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (when the Supreme Court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment). Thus, as used in ORS 742.520(6), the term "amount of benefits" means more than just a dispute about the dollar amount due for a particular treatment and encompasses a dispute about whether a treatment was reasonable and necessary.

If, as the Supreme Court held in *Foltz*, the question whether treatment is reasonable and necessary is a dispute about the amount of benefits under ORS 742.520(6), then we conclude that the question whether a particular treatment was necessitated by the covered injury likewise relates to the amount of benefits. That interpretation applies equally to ORS 742.061(2)(a). *Foltz* predates the legislature's amendment of ORS 742.061(2) in 1999. Or Laws 1999, ch 790, § 1. The legislature is presumed to have been aware of the court's interpretation of ORS 742.520(6) in *Foltz*, and its decision to use the same words in ORS 742.061(2) reflects a choice to apply the same meaning to those words. *See State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957).

Any ambiguity in the statutory language is resolved by the legislative history. ORS 742.061(2) was added to the statute in Senate Bill (SB) 504 (1999), which was offered by the insurance industry in response to Supreme Court and Court of Appeals decisions that together had had the effect of discouraging arbitration and encouraging litigation of PIP and uninsured/underinsured motorist (UM/UIM) disputes. Tape Recording, Senate Judiciary Committee, SB 504, Apr 29, 1999, Tape 154, Side A (statements by Tom Morland, Claims Manager for North Pacific Insurance Company, and Susan Youngstrom, Claims Adjuster for Allstate Insurance). *See Foltz*, 326 Or at 301-02 (holding that binding arbitration of PIP disputes would violate Article I, section 17, of the Oregon Constitution); *Carrier v. Hicks*, 316 Or 341, 352, 851 P2d 851 (1993) (holding that an unwilling UM or UIM claimant or insurer cannot be required to arbitrate the claim but rather can demand a jury trial); *Kramm v. Mid-Century Ins. Co.*, 153 Or App 325, 330-31, 956 P2d 1036 (1998) (holding that parties who pursue litigation to resolve PIP disputes are entitled to prevailing party attorney fees under the former version of ORS 742.061); *Douglass v. Allstate Ins. Co.*, 152 Or App 216, 219-23, 953 P2d 770 (1998) (holding that recovery of attorney fees under the former version of ORS 742.061 was not limited to coverage disputes but rather applied whenever the insurer disputed the insured's entitlement to a "complete recovery" and the recovery exceeded the insurer's tender).

As originally drafted, the bill would have exempted all PIP, UM, and UIM claims from attorney fee recovery under ORS 742.061. However, representatives of the insurance industry and the private plaintiffs' bar negotiated consensus amendments that limited the exemption for such claims to cases where the insurer did not dispute coverage and consented to submit the claim to binding arbitration, and where the only issues were "the liability of the uninsured or underinsured motorist and the damages due the insured" (the language that now appears at ORS 742.061(3)(a)). Tape Recordings, Senate Judiciary Committee, SB 504, May 13, 1999, Tape 179, Side A (statement of Robert Neuberger); House Rules, Elections and Public Affairs Committee, SB 504, June 14, 1999, Tape 92, Side A (statements of John Powell of North Pacific Insurance, and J. Michael Alexander,

representing Oregon Trial Lawyers Association). There is scant discussion of the meaning of "coverage" in the testimony, other than a passing comment from a member of the plaintiffs' bar that the proposed exceptions to ORS 742.061 were intended to apply to covered claims—"premiums are paid, it wasn't a stolen car, not an on-the-job injury." Tape Recording, Senate Judiciary Committee, SB 504, May 13, 1999, Tape 179, Side A (statement of Robert Neuberger).

Eventually, the Senate Committee recognized the need for a "housekeeping" amendment that would add text more appropriate to PIP claims, as distinguished from UM/UIM claims. Tape Recording, Senate Judiciary Committee, SB 504, May 20, 1999, Tape 192, Side A (statement of Anne Tweedt, Senate Judiciary Committee Counsel). A new subsection was added that included separate treatment for PIP benefits, making the exemption applicable in PIP cases when the insurer "has accepted coverage and the only issue is the amount of benefits due the insured." Or Laws 1999, ch 790, § 1, *codified as* ORS 742.061(2)(a). The language proposed earlier referring to the "damages due the insured" was retained for a separate provision relating only to UM/UIM benefits. Oregon Laws 1999, chapter 790, section 1, *codified as* ORS 742.061(3). There is no suggestion that the reference to "amount of benefits" in ORS 742.061(2)(a) was meant to have a more restrictive meaning than the reference to "damages due the insured" in the corresponding UM/UIM provisions of ORS 742.061(3)(a).

The legislative history reveals clearly that the purpose of the consensus amendment to ORS 742.061 was to encourage resolution of PIP claim disputes through arbitration by removing the attorney fee incentive to litigation if the insurer agreed to coverage and consented to arbitration. Tape Recordings, Senate Judiciary Committee, SB 504, Apr 29, 1999, Tape 154, Side A (statements by Tom Morland, Claims Manager for North Pacific Insurance Company, and Susan Youngstrom, Claims Adjuster for Allstate Insurance); House Rules, Elections and Public Affairs Committee, SB 504, June 14, 1999, Tape 92, Side A (statement of Tom Morland).

Our interpretation that "amount of benefits" encompasses disputes concerning whether treatment is related to the covered injury is consistent with the legislative intent of encouraging resolution of such cases short of litigation and carving out a category of disputes that are exempted from attorney fee liability when, as here, the insurer has agreed to coverage and has consented to submit the case to binding arbitration. The dissent's interpretation that a dispute is about the amount of benefits only if it relates to a dollar amount of reimbursement for a particular treatment would defeat that intention.

Affirmed.

**LANDAU, P. J.**, concurring.

Were we writing on a clean slate, I might arrive at a different result than the one that the majority reaches. I am not persuaded that its construction of the terms "coverage" and "amount of benefits" comports with their ordinary meanings or the meanings reflected in related statutes. I am persuaded, however, that the majority is correct in relying on *Foltz v. State Farm Mutual Auto. Ins. Co.*, 326 Or 294, 300, 952 P2d 1012 (1998). For that reason, I concur in the result.

**SCHUMAN, J.**, dissenting.

Plaintiff was injured in an automobile accident and prevailed in an action against Progressive Preferred Insurance Company (Progressive), his insurer, after Progressive refused to pay the full amount of plaintiff's claim under the policy's personal injury protection (PIP) provision. In a supplemental judgment, however, the trial court denied plaintiff's petition for attorney fees. Plaintiff appeals that denial. The majority affirms. For the reasons explained below, I would reverse.

The facts at this stage of the litigation are undisputed. Plaintiff was in a motor vehicle accident on November 4, 2001. At the time, he held an insurance policy issued by Progressive. The policy included a PIP provision. Four days after the accident, Progressive's representative sent plaintiff a letter informing him, "Progressive has accepted coverage for Personal Injury Protection benefits and is willing to submit your case to binding PIP arbitration," but also informing

him that it "may deny, limit or terminate benefits" that did not meet certain "criteria." Several months later, plaintiff underwent chiropractic treatment. Progressive refused to pay for the treatment on the ground that it was not directly related to the collision, one of the "criteria" that was a precondition for receipt of benefits. The letter informing plaintiff of that refusal stated:

> "However, in the end, should you disagree with our decision concerning coverage, you have the right to request arbitration as set out in your Progressive policy and ORS 742.520 to 742.512."[1]

Arbitration occurred, and the arbitrator ruled in favor of Progressive. Plaintiff appealed to the trial court, where a jury ruled in his favor. As described above, however, the court rejected plaintiff's petition for attorney fees. This appeal ensued.

The issues in this case involve the interpretation and application of ORS 742.061. That statute provides, in part:

> "(1)  Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

> "(2)  Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a)  The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

> "(b)  The insurer has consented to submit the case to binding arbitration."

It is undisputed that plaintiff meets the criteria for attorney fees set out in subsection (1): the case did not settle, and

---

[1] The letter is not in the record, but the quoted paragraph appears in the trial court's letter opinion and the parties do not dispute its contents.

plaintiff's recovery exceeded the amount of Progressive's tender. Our task is to decide whether this case is within the exception in subsection (2), that is, whether Progressive "accepted coverage," the "only issue [was] the amount of benefits due the insured," and Progressive "consented to submit the case to binding arbitration."

Resolving that question requires us to determine what Progressive actually did with respect to plaintiff's claim, disregarding the label that either party attached to those actions. Thus, it is of no import that, four days after the accident, Progressive wrote to plaintiff that it had "accepted coverage for Personal Injury Protection benefits and is willing to submit your case to binding PIP arbitration." An insurer cannot avoid liability for attorney fees by the painless expedient of a written statement that it "accept[s] coverage" and "consents to binding arbitration" if it subsequently demonstrates by word or deed that its definition of those terms is more expansive than the legislature's. Our task, in other words, is to determine whether Progressive actually "accepted coverage" so as to leave "only * * * the amount of benefits" at issue, and "consented to submit the case to binding arbitration" as the legislature used those terms in ORS 742.061(2).

In its letter to plaintiff shortly after the accident, Progressive's representative wrote:

"I am sorry to hear about your recent injury sustained in the above stated loss. To assist you during this unpleasant time, I will be handling the medical portion of your claim. Personal Injury Protection coverage provides you with coverage for reasonable and necessary medical expenses directly related to the accident. These expenses must be incurred within one year from the accident date or up to the coverage limit under your policy, whichever comes first. Please be advised that we may deny, limit or terminate benefits if it is determined such expenses do not meet this criteria. If a dispute arises regarding the amount of benefits due, please be advised that pursuant to ORS 742.061 Progressive has accepted coverage for Personal Injury Protection benefits and is willing to submit your case to binding PIP arbitration."

Ultimately, and in accordance with its letter, Progressive accepted the fact that, at the time of the accident, plaintiff held a Progressive auto insurance policy that included PIP protection, but it did *not* accept the fact that plaintiff's chiropractic expenses fell within the terms of that PIP protection, arguing that the expenses were not related to injuries he sustained in the accident.[2] That issue was litigated.

Thus, the precise question before us is whether the legislature, in using the phrase "the insurer has accepted coverage and the only issue is the amount of benefits," intended to include a situation in which the insurer accepts the fact that the insured holds a policy and that the general type of expense incurred (here, personal injury protection) is within the terms of that policy, but nonetheless maintains that a particular expense claimed does not entitle the insured to benefits because it does not meet certain criteria imposed by the insurer. Progressive argues, and the trial court and the majority agree, that the legislature intended just that. Plaintiff, on the other hand, argues that an insurer has "accepted coverage and the only issue is the amount of benefits" only when the insurer has agreed to reimburse the insured for each item he or she claims as an expense and disputes only the amount claimed for one or more of the items.

I begin and end my analysis with a portion of the text of ORS 742.061(2) itself:

"Subsection (1) of this section [entitling an insured to attorney fees] does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a) The insurer has accepted coverage and the only issue is the amount of benefits due the insured[.]"

---

[2] In its "Response to Plaintiff's Request for Admissions," Progressive admitted that plaintiff's "chiropractic care was necessary as a result of plaintiff's injuries from the motor vehicle collision of November 4, 2001." As developed at trial, however, Progressive's ultimate position was that the care was not related to the accident; the parties agreed that the only issue for the jury was "whether the medical billings [for chiropractic treatment] between August 2, 2002 and October 31, 2002 are related to the accident of November 4, 2001."

Although much of the parties' dispute focuses directly on the meaning of "coverage," paragraph (2)(a) establishes *two* complementary criteria that must exist in order for the insurer to avoid liability for attorney fees: the insurer must have accepted coverage and there must remain only one issue, namely, the "amount of benefits." If the insurer's "acceptance" leaves other issues unresolved, then the insurer has not accepted coverage, and it is still exposed to attorney fees.

The majority concludes that, in acknowledging that plaintiff has PIP insurance but disputing whether, under that insurance, he is entitled to benefits for the chiropractic treatment he received, Progressive is disputing "the amount of benefits"; if plaintiff's chiropractic expenses qualify as insured costs, plaintiff will receive a greater "amount of benefits"—*i.e.,* more money—than he would receive if the expenses do not qualify. That sense of the statute, however, does not survive scrutiny for at least two reasons. First, it eliminates any distinction between "coverage" and "amount of benefits," thereby rendering part of the statute meaningless; an insurer could reject a claim for any reason, or for no reason, and maintain that the only issue was "amount of benefits" because, had the insurer accepted the claim, the insured would receive more money. Second, the word "amount" refers to quantity and not to any other nonquantifiable characteristic. Thus, when an insurer rejects a claim because it fails to meet a precondition established in the policy, then, even if "amount" refers to the ultimate size of the insured's benefit, the ensuing dispute is not "only" about amount; it is also about whether the claim possesses some particular characteristic such as being directly related to a covered accident.

In the present case, even if I could accept Progressive's argument that its rejection of plaintiff's claim for chiropractic treatment involved the "amount of benefits due" to him, I cannot accept the argument that the rejection involved *only* that issue. It also involved the separate issue of whether those treatments were related to the accident.

This interpretation conforms to common sense and to common usage, even in the context of insurance claims. Imagine the following hypothetical situation. A homeowner

has a valid fire insurance policy that will pay replacement or repair costs and reimburse the homeowner for one month's rent while she looks for a replacement or is displaced because of ongoing repair work. Her house burns. She is told that replacement will cost $500,000 and repairs will cost $100,000 and take up to six months to complete. She decides to rebuild and rent an apartment for the duration. She telephones her insurance provider, describes the damage and the options, and asks, "If I have to find alternative housing, am I covered?" Under Progressive's and the majority's definition of "coverage," the insurer can reply, "Yes, you have coverage," because by doing so the insurer merely acknowledges that the homeowner is a person who owns a policy, the house is a covered item in the policy, and fire is an event insured against. Hearing that answer, the homeowner would surely be shocked when the insurer subsequently denies her request for reimbursement for five of the six months' rent she has paid under the impression that she was covered. The insurer's answer cannot be reconciled with how real policyholders and real insurance adjusters talk to each other.

Because I conclude that Progressive's statements to plaintiff and its posture in litigation left unresolved issues beyond the amount of benefits, I would hold that Progressive cannot avail itself of the immunity from attorney fees in ORS 742.061(2). I would therefore reverse and remand in order for the trial court to determine "a reasonable amount to be fixed by the court as attorney fees * * *." ORS 742.061(1).