Argued and submitted February 18, affirmed on appeal; reversed and remanded on cross-appeal August 19, 2009

## Araceli CARDENAS
(Castellano),
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

## FARMERS INSURANCE COMPANY,
*Defendant-Appellant*
*Cross-Respondent.*

Multnomah County Circuit Court
051213555; A135642

215 P3d 919

Thomas M. Christ argued the cause for appellant - cross-respondent. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Joanne Reisman argued the cause and filed the briefs for respondent - cross-appellant.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

### SCHUMAN, J.

Defendant Farmers Insurance Company appeals a supplemental judgment awarding attorney fees to plaintiff, its insured, after plaintiff prevailed in an action for payment of uninsured motorist (UM) benefits. Plaintiff cross-appeals, seeking additional fees. The question before us on appeal is whether a dispute concerning the enforceability of a release is an issue that relates only to "damages"; if so, then defendant qualifies for the "safe harbor" immunity from attorney fees established by ORS 742.061(3), set out below. We hold that such a dispute does not involve only damages. We therefore affirm on appeal. The issue on cross-appeal is whether the attorney fees to which plaintiff is entitled after prevailing against defendant in an appeal from an arbitrator's decision include fees incurred not only for the work involved in the arbitration but also for the work involved in the appeal from the arbitrator's decision. We hold that plaintiff is entitled to such fees, but that the trial court has the obligation in the first instance to determine what fees are reasonable. We therefore reverse and remand on cross-appeal.

Plaintiff sustained personal injuries in an automobile accident caused by a hit-and-run driver. She sought UM benefits under her policy with defendant. Defendant paid her $800 in exchange for her signing a "Trust Agreement and Release in Full," which "release[d] and discharge[d]" defendant "from all rights, claims, demands and damages of any kind * * * resulting from bodily injury arising from" the accident. Plaintiff did not speak English, and she was not represented by counsel at the time.

More than one year later, plaintiff, having retained counsel, sent defendant a letter styled "as a proof of loss pursuant to ORS 742.061," rescinding any "previously executed * * * release forms" and requesting additional UM benefits under plaintiff's policy. Plaintiff asserted that she "could not have understood what she was signing due to [the] language barrier." Defendant responded by letter that plaintiff's claim had already been "settled and paid," attaching a copy of the release. Sixteen days later, defendant sent another letter to plaintiff, stating:

"As there are no issues as to the existence of UM coverage, with the only issues being the liability of the uninsured driver, your client's damages, or both, Farmers agrees to binding arbitration of this matter."

Notwithstanding defendant's offer to arbitrate, plaintiff filed a complaint in circuit court seeking more than $37,500 in additional UM benefits. In its answer to plaintiff's complaint, defendant denied that it owed any additional benefits to plaintiff.

Defendant again offered to arbitrate the dispute, and this time plaintiff agreed. At issue was the enforceability of the release and, if it was determined not to be enforceable, the amount of additional damages owed to plaintiff. The arbitrator ruled in plaintiff's favor, concluding that the previously signed release was "not enforceable" because plaintiff "do[es] not speak English and cannot read or write in" English and thus "did not understand the language in the * * * agreement and did not intend to release [her] UM claims." The arbitrator determined that plaintiff was entitled to $11,889.05 in damages, minus the $800 that defendant had already paid. That much of the arbitrator's decision is not disputed on appeal or cross-appeal. However, the arbitrator declined to award attorney fees to plaintiff, ruling that defendant had qualified under ORS 742.061(3). That statute entitles an insured to attorney fees if he or she brings an action on a policy and recovers more than the insurer offers in settlement, but provides the insurer a "safe harbor" by insulating it against having to pay attorney fees in personal injury protection (PIP) and UM cases under certain circumstances. The statute provides:

"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state * * *, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *

"(2) Subsection (1) of this section does not apply to actions to recover [PIP] benefits if, in writing, not later than

six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration.

"(3)   Subsection (1) of this section does not apply to actions to recover [UM] benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issues are the liability of the [UM] motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

The arbitrator ruled that, in this UM case, defendant met all of the requirements for avoiding fees under subsection (3): it responded to plaintiff's notice of proof of loss within six months, agreed to binding arbitration, and accepted coverage, and the only disputed issues were liability and damages.

Plaintiff filed an exception to the arbitrator's denial of attorney fees and requested a hearing *de novo* in circuit court. She contended that, in addition to damages and liability, the parties also disagreed on the enforceability of the release. Defendant responded that, because the enforceability of the release determined whether plaintiff would receive $800 in damages or a larger sum, the release issue was itself a dispute about damages. The trial court agreed with plaintiff and, in a supplemental judgment, awarded her $16,036.83 in attorney fees and costs. The court reasoned that "the assertion by * * * [defendant] that a release [agreement] bars further recovery by * * * plaintiff creates an issue which removes the case from the exception created by ORS 742.061(3)." The court's award, however, did not include the fees that plaintiff had incurred in preparing the circuit court appeal from the arbitrator's decision; the court denied plaintiff's request for those fees without explanation. Defendant appeals the trial court's ruling that it did not qualify for the

safe harbor of ORS 742.061(3). Plaintiff cross-appeals, contending that she is entitled to fees not only for the arbitration but also for the subsequent circuit court appeal.

■     Defendant's appeal is based on a single argument. It maintains that a dispute

"is about the 'damages due' even if the dispute is about *whether* any damages are owed at all.

"In this case, defendant accepted coverage and paid plaintiff some damages in exchange for a release in which she discharged defendant from any obligation to pay more. A dispute then arose about whether more damages were in fact due despite the release and, if so, how much more was owed. * * * Thus, the only issue to be arbitrated was an issue about the 'damages due,' if any. * * *"

(Emphasis in original.) Defendant recognizes that the Supreme Court's decision in *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007), presents an impediment to that argument. In the part of *Grisby* that was not modified on reconsideration, the Supreme Court examined ORS 742.061(2), the section of the safe harbor statute dealing with PIP cases. That section, quoted above, insulates the insurer who has consented to submit a PIP case to binding arbitration and "has accepted coverage and the only issue is *the amount of benefits due the insured.*" (Emphasis added.) The plaintiff in *Grisby* sought, among other things, PIP payments to cover certain chiropractic treatments that he alleged resulted from an automobile accident. The insurer denied that part of the claim on the ground that the need for treatment was not caused by the accident. The case went to arbitration and then to court, where the plaintiff prevailed. *Grisby*, 343 Or at 177. The trial court, however, denied the plaintiff's entitlement to attorney fees, relying on ORS 742.061(2) and reasoning that the issue of causation was part of the issue of amount of benefits because a finding in favor of the insurer would result in fewer benefits. *Grisby*, 343 Or at 177-78.

On appeal to this court, the plaintiff contended that the dispute about causation was not a dispute over the "amount of benefits." *Grisby v. Progressive Preferred Ins. Co.,*

207 Or App 592, 597-98, 142 P3d 531 (2006). A majority of the panel disagreed, holding that " 'amount of benefits' also encompasses other matters relating to the availability of benefits for a particular covered injury, including whether certain medical expenses are related to the injury." *Id.* at 598.

The Supreme Court allowed review. The defendant again argued that a dispute over whether the accident caused the need for a particular treatment was a dispute about the "amount of benefits," because resolving the causation issue determined whether the insured would receive any benefits at all. *Grisby*, 343 Or at 182. Reversing this court, the Supreme Court rejected that argument. *Id.* at 182-83. The court reasoned that, by using the word "amount" in the phrase "amount of benefits," the legislature demonstrated an "intent to limit the attorney fee exception of ORS 742.061(2)(a) to disputes over the quantum of benefits and to exclude from the effect of that provision *other* disputes about the 'benefits due the insured.' " *Grisby*, 343 Or at 182 (emphasis in original). The court also explained that, even if the question of the "amount of benefits" involved some predicate determination such as causation, and that predicate was part of the dispute over the "amount of benefits," "it nevertheless would be inaccurate to say that the dispute is 'only' about the amount of benefits. Defendant here disputed not only the 'amount' of the claim * * *; it *also* disputed whether it should pay for those services *at all*." *Id.* at 182-83 (emphasis in original). Thus, issues beyond liability and the amount of benefits had remained unresolved when the case went to arbitration, and, consequently, the insurer could not take advantage of the safe harbor in ORS 742.061(2).

Defendant argues that *Grisby* is distinguishable. That case, defendant argues, came out the way it did because the PIP safe harbor provision refers to "the amount of benefits due the insured," whereas the UM section uses the phrase "the damages due the insured." The difference, defendant contends, is significant: by *excluding* the phrase "amount of" in the UM section, the legislature must have intended to *include* disputes that were concerned about more than just the dollar amount at issue.

We disagree. It is true that, when the legislature includes a phrase in one section of a statute and not in another, we can presume that the omission is purposeful. *Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986). However, the purpose of the omission here was not what defendant identifies. We reach that conclusion for two reasons. First, if omitting the phrase "amount of" was intended to indicate that a dispute about "damages" can include any dispute that has an impact on the amount of damages, the exception to insurer liability in UM cases nearly swallows the rule; it is difficult to think of any UM claim that is not ultimately about whether the insured is entitled to damages and, if so, how much. Put another way: If "damages" has the meaning that defendant proposes, then the phrase "damages due the insured" is surplusage. The universe of cases in which the only issues are liability and damages would be the same as the universe of cases in which the only issue is liability, because there would not be any cases in which damages are *not* an issue.

Second, and more significantly, defendant's inference—that the UM provision differs from the PIP provision because the legislature intended the UM safe harbor to be much more expansive—cannot be squared with the statute's legislative history. The bill that added paragraphs (2) and (3) to ORS 742.061 was Senate Bill (SB) 504 (1999). An early draft of the bill would have exempted PIP, UM, and underinsured motorist (UIM) claims from attorney fee recovery when the insurer did not dispute coverage and consented to submit the case to binding arbitration and the only issues were "the liability of the uninsured or underinsured motorist and the damages due the insured." At a work session of the Senate Judiciary Committee, however, committee counsel noted that the language was not appropriate for PIP claims, because liability in such claims is not an issue. Counsel reported that the bill's proponents had agreed to address that problem in the House. Tape Recording, Senate Judiciary Committee, SB 504, May 20, 1999, Tape 191, Side B; Tape 192, Side A (statement of Anne Tweedt).

Subsequently, in the House, "[a] new subsection was added that included separate treatment for PIP benefits, making the exemption applicable in PIP cases when the

insurer 'has accepted coverage and the only issue is the amount of benefits due the insured.' Or Laws 1999, ch 790, § 1, *codified as* ORS 742.061(2)(a)." *Grisby*, 207 Or App at 600. One of the proponents, the claims manager for North Pacific Insurance Company, explained:

> "The amendment to the bill that was just submitted to the committee is an attempt simply to clarify in the case, on one hand, the PIP benefits, * * * and, on the other hand, uninsured/underinsured motorist benefits, so that the wording is correct when applying to those respective categories so it's essentially a housekeeping amendment."

Tape Recording, House Rules, Elections and Public Affairs Committee, SB 504, June 14, 1999, Tape 92, Side A (statement of Tom Mortland).

We understand that a single statement by a nonlegislator is relatively weak legislative history, but, in this case, we give it considerable credibility nonetheless. *See State v. Kelly*, 229 Or App 461, 466-67, 211 P3d 932 (2009) (discussing weight to be given isolated statements of single legislators and nonlegislator witnesses). The statement comes from a spokesperson for the interest group that proposed the legislation. *See Grisby*, 207 Or App at 599. Further, the testimony accurately reflects what the bill actually does; the changes in the bill's language were, in fact, necessary in order make the new section conform to other PIP statutes. Not only is liability a nonfactor in PIP cases, but the statutes governing PIP define an insured's entitlement (if any) not as "damages," but as "benefits." *See, e.g.*, ORS 742.520(1) ("Every motor vehicle liability policy * * * that covers any private passenger motor vehicle shall provide [PIP] benefits to the person insured thereunder[.]"); ORS 742.520(3) ("[PIP] benefits consist of payments for expenses, loss of income and loss of essential services * * *."). As the witness explained, the original language simply did not fit PIP claims. A new subparagraph was necessary. We find no reason to believe that wording changes to the UM provision were anything more than the "housekeeping" changes that the witness described. And there is nothing in the legislative history to indicate that the changes were intended to work the kind of significant substantive difference that defendant suggests.

Thus, we reject defendant's argument that the use of "amount of benefits due the insured" in the PIP provision and "damages due the insured" in the UM provision reflects the legislature's intent to give each provision a radically different scope. The Supreme Court held in *Grisby*, "Only after the trier of fact had agreed with plaintiff on *that* preliminary issue [of causation] could it turn to the issue of the *amount* of benefits that plaintiff should receive under the policy." 343 Or at 183 (emphasis in original). Similarly, we conclude that only after the court in this case had resolved the preliminary issue of the release's enforceability could it turn to the issue of the damages that plaintiff should receive under the policy. Damages, in other words, was not the only issue submitted to binding arbitration. Defendant was therefore not eligible for the attorney fee safe harbor in ORS 742.061(3), and the trial court did not err in so ruling.

■ Plaintiff cross-appeals, arguing that the trial court erred in denying her request for the additional attorney fees she incurred in preparing and arguing her exception to the arbitrator's ruling. Plaintiff is correct; ORS 742.061 provides that, if "the plaintiff's recovery exceeds the amount of any tender made by the defendant * * *, a reasonable amount to be fixed by the court as attorney fees shall be taxed and allowed to the defendant as part of the costs of the action *and any appeal thereon*" unless the defendant qualifies under one of the safe harbor provisions. (Emphasis added.) As we have decided, defendant does not qualify. Defendant does not contest plaintiff's entitlement to attorney fees for the circuit court appeal, but responds that the entitlement is only to a "reasonable fee," a determination for the trial court. *See Taylor v. McCollom*, 153 Or App 670, 684-85, 958 P2d 207 (1998). We agree and remand to the trial court so that it can make that determination.

Affirmed on appeal; reversed and remanded on cross-appeal.