Argued and submitted January 21, resubmitted en banc October 15, 2015, affirmed January 27, petition for review allowed June 30, 2016 (359 Or 847)

Alex SPEARMAN,
*Plaintiff-Appellant,*

*v.*

PROGRESSIVE CLASSIC
INSURANCE COMPANY,
a Wisconsin corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
130201718; A155674

366 P3d 839

Willard E. Merkel argued the cause for appellant. With him on the briefs was Merkel & Associates.

James B. Rich argued the cause for respondent. With him on the brief was Harris, Wyatt & Amala, LLC.

Before Hadlock, Chief Judge, and Armstrong, Ortega, Sercombe, Duncan, Egan, DeVore, Lagesen, Tookey, Garrett, Flynn, Judges, and Haselton, Senior Judge, and Nakamoto, Judge pro tempore.

FLYNN, J.

DeVore, J., concurring.

**FLYNN, J.**

This appeal arises from plaintiff's action alleging that his motor vehicle insurance carrier breached its contract to pay uninsured motorist benefits. After prevailing in that action, plaintiff petitioned for an award of attorney fees under ORS 742.061(1), a statute that, in general, requires insurance companies to pay an attorney fee to an insured who prevails in an action to recover insurance benefits. The trial court denied plaintiff's fee petition after concluding that defendant's response to the insurance claim brought defendant within the scope of ORS 742.061(3), a so-called "safe harbor" from the obligation to pay fees. The "safe harbor" applies in actions to recover uninsured/underinsured motorist (UM/UIM) benefits if "the only issues are the liability of the insured or underinsured motorist and the damages due the insured." ORS 742.061(3).

On appeal, plaintiff argues that defendant raised issues beyond the scope of ORS 742.061(3) by suggesting that plaintiff had no "unreimbursed accident-related medical expenses," *i.e.*, that plaintiff could recover zero dollars in his UM action. We conclude from the statutory text and context that the issues that are within the scope of ORS 742.061(3) are the issues of liability and damages that an insured would have to establish in an action against the uninsured or underinsured motorist. To the extent that our decision in *Cardenas v. Farmers Ins. Co.*, 230 Or App 403, 215 P3d 919 (2009), suggests "damages due" is a reference to the benefit due the insured from the insurer, we disavow that suggestion. Defendant's pleadings—which admitted that plaintiff sustained some injury in the collision— disputed only the amount of damages plaintiff sustained, as permitted by ORS 742.061(3). Accordingly, we affirm.

## I. BACKGROUND

The facts pertinent to this appeal are few and undisputed. Plaintiff was injured in a collision with an uninsured motorist and submitted a claim for UM benefits to defendant, which had sold him a policy of motor vehicle insurance. When the parties were unable to resolve the UM claim, plaintiff filed the present action on the policy. Plaintiff's complaint sought recovery for only "unreimbursed accident-related

medical expenses"—those expenses for which plaintiff had not already been reimbursed under other coverage. In its answer, defendant admitted that plaintiff sustained "some" injury in the collision with the uninsured motorist but disputed "the nature and extent of plaintiff's alleged injuries" and disputed "the reasonableness and necessity of some of plaintiff's accident-related medical expenses."

Because the amount in dispute in plaintiff's action was less than $50,000.00, the trial court transferred the action to its arbitration program, ORS 36.400(3), and the arbitrator found plaintiff entitled to $6,022.80 under the UM policy. The arbitrator denied plaintiff's petition for attorney fees, however, and the trial court upheld that determination. That is the ruling to which plaintiff assigns error on appeal.

## II. ANALYSIS

Plaintiff argues that, because his complaint sought only his "unreimbursed accident-related medical expenses," defendant's dispute regarding "the reasonableness and necessity of some of [p]laintiff's accident-related medical expenses" permitted defendant to assert that plaintiff had been fully compensated for his injuries. According to plaintiff, that position "would permit the finder of fact to determine that [p]laintiff was not entitled to any award" in the UM action and, thus, raises an issue beyond those permitted by ORS 742.061(3).

A. *Pertinent Statutory Text, in General*

Before examining the parties' dispute in detail, we review the pertinent statutes. ORS 742.061(1) provides that, in an action upon an insurance policy, the insured is entitled to recover an award of reasonable attorney fees

"if a settlement [of an insurance claim] is not made within six months from the date proof of loss is filed with an insurer *** and the plaintiff 's recovery exceeds the amount of any tender made by the defendant in such action ***."[1]

---

[1] Although "the text presupposes that the insured has been the plaintiff and that he has gained a recovery against the insurer ***, the reach of the statute has been extended beyond its literal words where the position of the parties was functionally the same though procedurally different." *Travelers Ins. Co. v. Plummer*, 278 Or 387, 391, 563 P2d 1218 (1977) (explaining predecessor statute).

As the Supreme Court has explained, that provision "applies to actions brought on insurance policies of any kind" and serves the "purpose of encouraging settlement of insurance claims without litigation." *Strawn v. Farmers Ins. Co.*, 353 Or 210, 221 n 8, 297 P3d 439 (2013). That general right to recover fees from recalcitrant insurers has been available to Oregon insureds—in essentially the same form as ORS 742.061(1)—since 1919. *See Morgan v. Amex Assurance Company*, 352 Or 363, 368, 287 P3d 1038 (2012) (discussing statutory history (citing Or Laws 1919, ch 110, § 1)).

The 1999 legislature, however, created the exception set out in ORS 742.061(3), as well as a parallel exception for actions to recover personal injury protection (PIP) benefits, which is set out in ORS 742.061(2). Or Laws 1999, ch 790, § 1. Those exceptions provide:

"(2)   Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration.

"(3)   Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

ORS 742.061.

The exceptions were added at the behest of insurance carriers that were concerned that recent appellate decisions applying ORS 742.061 to PIP and UM/UIM actions had increased the number of actions filed in court. Audio Recording, House Committee on Rules, Elections, and Public

Affairs, SB 504, June 14, 1999, at 0:06.22 (statement of Tom Mortland, claims attorney, North Pacific Insurance Company), http://www.leg.state.or.us/listn/1999s.htm (accessed Jan 20, 2016). As originally drafted, the bill would have exempted all PIP, UM, and UIM claims from attorney fee recovery under ORS 742.061. Representatives of the insurance industry and the private plaintiffs' bar, however, negotiated consensus amendments that limited the exemption to claims for which the insurer did not dispute coverage and consented to binding arbitration, and for which the only issues were "the liability of the uninsured or underinsured motorist and the damages due the insured." Tape Recording, Senate Judiciary Committee, SB 504, May 13, 1999, Tape 179, Side A (statement of Robert Neuberger); Tape Recording, House Committee on Rules, Elections, and Public Affairs, SB 504, June 14, 1999, Tape 92, Side A (statements of John Powell of North Pacific Insurance Company, and J. Michael Alexander, representing Oregon Trial Lawyers Association).

B.  *The Statutory Text in Dispute Here*

In this case, there is no dispute that plaintiff has satisfied the basic requirements for an award of fees set out in ORS 742.061(1). There is also no dispute that defendant sent the timely written notice described in ORS 742.061(3). As we recently held, however, an insurer that sends the notice described in ORS 742.061(3) may lose the ability to rely on that safe harbor if it later pursues a litigation strategy that is "broader than that contemplated by the legislature in ORS 742.061(3)." *Kiryuta v. Country Preferred Ins. Co.*, 273 Or App 469, 474, 359 P3d 480 (2015), *rev allowed*, 358 Or 529 (2016). In *Kiryuta*, however, we were not called upon to identify the scope of issues "contemplated by the legislature in ORS 742.061(3)." The issue was whether the insurer pursued affirmative defenses it labeled "Contractual Compliance" and "Offset" by pleading them, and there was no real dispute that—if pursued—the affirmative defenses would have involved litigation of issues beyond "the liability of the uninsured or underinsured motorist and the damages due" the insured. *Id.* at 474.

This case calls upon us to determine whether the scope of issues "contemplated by the legislature in ORS

742.061(3)" includes a challenge to the extent of the insured's injuries that could result in the insured recovering nothing in the UM action. Defendant does not contend that its challenge to the "extent of plaintiff's injuries" could be considered an issue of "liability of the uninsured or underinsured motorist." Thus, this case requires us to identify the scope of issues of "the damages due the insured" and to determine whether defendant stayed within that scope. As with all issues of statutory construction, we focus primarily on statutory text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

C. *"[A]ctions to Recover Uninsured or Underinsured Motorist Benefits"*

Because ORS 742.061(3) applies to "actions to recover uninsured or underinsured motorist benefits," we begin by exploring the nature of those benefits. UM/UIM coverage is a mandatory part of every Oregon motor vehicle insurance policy. ORS 742.502. The benefit that must be paid under that coverage is "all sums that the insured * * * is legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident * * *." ORS 742.504(1)(a).[2] The purpose of UM/UIM coverage is to "'put the person injured by an uninsured motorist in the same position he would be in had he been injured by an insured motorist.'" *Vega v. Farmers Ins. Co.*, 323 Or 291, 306 n 13, 918 P2d 95 (1996) (quoting legislative history of ORS 742.504).

Consistent with that purpose, "[s]ums that the insured, * * * is legally entitled to recover as * * * damages from the owner or operator of an uninsured vehicle" is further defined to mean "the amount of damages that * * * [a] claimant could have recovered in a civil action from the owner or operator at the time of the injury after determination of fault or comparative fault and resolution of any

---

[2] ORS 742.504 describes the minimum terms that must be included in all Oregon motor vehicle insurance policies. The statute as amended after the briefing of this appeal now refers only to "damages" rather than "general and special damages" but otherwise retains the quoted language. Or Laws 2015, ch 5, § 3. The 2015 amendments do not apply to this dispute. Or Laws 2015, ch 5, § 7.

applicable defenses," although this amount is subject to permitted limitations on the "benefits payable under the terms of the policy[.]" ORS 742.504(2)(j). In other words, at the core of any action to recover UM/UIM benefits is the premise that an uninsured or underinsured motorist would be liable to the insured in a civil action for some amount of damages for bodily injury.

D. *"[D]amages Due the Insured"*

Given the purpose of UM/UIM benefits, defendant argues, the scope of "damages due the insured" in the UM/UIM safe harbor should be understood as the damages that would be due the insured in a negligence action brought by the insured against the uninsured or underinsured motorist brought by the insured. *See Vega*, 323 Or at 306 n 13 (purpose of UM/UIM coverage is to "put the person injured by an uninsured motorist in the same position he would be in had he been injured by an insured motorist"). Plaintiff, however, urges us to conclude that "damages due the insured" means the same thing as "the amount of the benefits due the insured from the insurance carrier" and that a dispute suggesting that the insurer owes no benefit exceeds the scope of the safe harbor. Beyond the fact that the legislature did not use the text plaintiff proposes, the text that the legislature did use presents at least two obstacles to plaintiff's interpretation.

First, the phrase "damages due" is otherwise used in the pertinent statutes to refer to what the insured could recover from the uninsured motorist, not from the insurer. ORS 742.061 describes the amount due from the insurer as "the plaintiff's recovery." Throughout ORS 742.504, the term "damages" is used to refer to what the insured could recover in a civil action against the uninsured driver, while what the insurer pays is referred to as "all sums that the insured" is entitled to recover as damages from the uninsured driver, subject to limitations imposed under the terms of the policy.

Second, if "damages due the insured" means "benefits due the insured from the insurer," then it was redundant for the legislature to specify in ORS 742.061(3) that the insurer also can raise issues related to "liability of

the uninsured or underinsured motorist." It is redundant because the benefit due already depends upon whether and to what extent the uninsured motorist would be liable for the plaintiff's damages. *See* ORS 742.504(2)(j) (taking into account comparative fault). We are charged to construe statutes so that no part is meaningless if it is possible to do that. *See* ORS 174.010; *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004) ("When, as in this case, a statute contains multiple provisions, ORS 174.010 directs us to read those provisions, if possible, in a way that will give effect to all of them."). Nevertheless, plaintiff urges us to interpret the scope of issues that may be raised under ORS 742.061(3) as equivalent to the scope of issues that may be raised under ORS 742.061(2), a scope that the Supreme Court has said precludes disputes that could result in the insured recovering no *benefits*. *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 182-83, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007).

E. *Pertinent Statutory Context of ORS 742.061(2), as Construed in* Grisby

As plaintiff points out, ORS 742.061(2) and (3) were adopted together, and the statutory text describing the scope of each provision is nearly identical, differing in only one respect: for the safe harbor on a UM/UIM action, "the only issues" can be "the liability of the uninsured or underinsured motorist and the damages due the insured," while, for the safe harbor on a PIP action, the "only issue" can be "the amount of benefits due the insured." It is *Grisby's* construction of "benefits due the insured" as used in subsection (2) that plaintiff urges us to adopt as the scope of subsection (3). We decline to treat the textual distinction as meaningless.

In *Grisby*, the plaintiff successfully sued to recover benefits under his PIP coverage when his insurer, after paying for some medical expenses and loss of income related to the injury, denied payment for additional chiropractic treatment that it considered to be unrelated to the plaintiff's accident. 343 Or at 177. When the trial court denied the plaintiff's request for an attorney fee, citing ORS 742.061(2), the plaintiff appealed. We reasoned that the dispute regarding payment for the chiropractic treatment was merely a dispute

about the "amount of benefits due the insured," an issue permitted by ORS 742.061(2). *Grisby v. Progressive Preferred Ins. Co.*, 207 Or App 592, 601, 142 P3d 531 (2006). But the Supreme Court disagreed.

The Supreme Court reasoned that the legislature's use of

> "the limiting words 'the *only issue*' * * * emphasizes the legislature's apparent intent to limit the attorney fee exception of ORS 742.061(2)(a) to disputes over the quantum of benefits and to exclude from the effect of that provision *other* disputes about the 'benefits due the insured.'"

343 Or at 182 (emphases in original). The court then reasoned that the defendant's dispute as to whether it was obligated to pay for the claimed services "at all" was more than a dispute about the "amount" the insurer should pay for those services because "[o]nly after the trier of fact had agreed with plaintiff on *that* preliminary issue could it turn to the issue of the *amount* of benefits that plaintiff should receive under the policy." *Id.* at 182-83 (emphases in original). In other words, *Grisby* held that the scope of issues that an insurer may raise under ORS 742.061(2) is limited to the "amount [greater than zero] of benefits due the insured." *Id.* at 184.

We reject plaintiff's contention that *Grisby* also describes the scope of issues that may be raised under ORS 742.061(3). *Grisby* construed the one aspect of subsection (2) for which the text differs from subsection (3). For a UM/UIM action, the legislature has not described the scope of permitted issues as "benefits due the insured," but as "the liability of the uninsured or underinsured motorist and the damages due the insured." Plaintiff's proposal would read out the reference to "liability," because any successful contention that the uninsured motorist has no liability to the insured necessarily means that the insured is entitled to recover no damages from the uninsured motorist and, thus, no benefits under the UM/UIM policy. *See* ORS 742.504(1)(a).

Moreover, even if plaintiff means only that we should follow *Grisby* to identify the scope of the issue regarding "the damages due the insured," we cannot treat that phrase

as equivalent to "the amount of benefits due the insured" without ignoring the legislature's use of distinct terms in the two provisions. There are several textual problems with that argument. As we have already explained in our textual analysis, "damages due the insured" has a meaning different from "benefits due the insured from the insurer."

In addition, incorporating *Grisby*'s construction of the PIP safe harbor would require us to ignore the distinct contexts to which the two safe harbor provisions apply. *Grisby*'s construction of "amount of benefits" specifically looked to the statute describing PIP benefits. As the court emphasized, that statute distinguishes between disputes about the "amount of benefits" and disputes about the denial of benefits. Unlike the term "benefits due" in the context of a PIP claim, the term "damages due" in a UM/UIM claim does not refer to "the damages due the insured [from the insurer]." As the nature of a claim for UM/UIM benefits and the text of ORS 742.061(3) indicate, "damages due the insured" is a reference to damages due the insured from a liable uninsured motorist. It has a different meaning than the phrase "benefits due" that the Supreme Court addressed in *Grisby*.

F.   Cardenas

Plaintiff argues that this court has already held that *Grisby*'s interpretation of subsection (2) applies to subsection (3) as well. In *Cardenas*, we held that the insurer raised an issue beyond the scope of the UM/UIM safe harbor when it asserted, as an affirmative defense to the entire action, that the insured had signed an agreement to release her UM claim in exchange for $800. 230 Or App at 412. That holding is fully consistent with our interpretation of ORS 742.061(3). The defense of "release" asserted in *Cardenas* is clearly an issue beyond the issues of liability and damages that the insured would confront in an action against the uninsured motorist. That is not, however, the rationale that we gave for our holding in *Cardenas*.

It appears that the parties (and the court) in *Cardenas* assumed that "damages due the insured" is equivalent to "benefit due the insured from the insurer"

and focused, instead, on whether it is significant that the phrase "amount of" does not appear in the UM/UIM safe harbor. According to the insurer, because *Grisby* focused on the words *"amount of* benefit due," that textual distinction made *Grisby* inapplicable and allowed UM/UIM insurers to safely raise any dispute relevant to what—or whether—the insured will recover on the UM/UIM claim. *Cardenas,* 230 Or App at 409 (emphasis added).

In the course of considering the insurer's argument, we cited legislative history suggesting that the wording difference between the PIP and UM/UIM safe harbors reflects a "housekeeping" change consistent with the fact that "the statutes governing PIP define an insured's entitlement (if any) not as 'damages,' but as 'benefits.'" *Id.* at 411 (citing Tape Recording, House Committee on Rules, Elections, and Public Affairs, SB 504, June 14, 1999, Tape 92, Side A (statement of Tom Mortland)). We relied on that statement of intent to emphasize why we rejected the "argument that the use of 'amount of benefits due the insured' in the PIP provision and 'damages due the insured' in the UM provision reflects the legislature's intention to give each provision a radically different scope." *Id.* at 412.

We did not (and do not now) read that statement of intent as suggesting—contrary to what the text and context indicate—that the legislature intended the phrase "liability of the uninsured or underinsured motorist and the damages due the insured" to mean the same thing as "amount of benefits due the insured." Rather, the statement recognizes that the reference to "damages" in ORS 742.061(3) is a reference to the essence of a UM claim—damages the insured would be entitled to recover from the uninsured motorist. The legislature used the phrase "amount of benefits" in the PIP safe harbor because "damages" are not an issue, but it did not use the word "benefits" in the UM/UIM safe harbor because, in that context, "benefits" and "damages" do not have the same meaning.

Indeed, unlike the amount payable in PIP benefits, which are set by statute at fixed dollar maximums for a short list of qualifying expenses—primarily, medical expenses and wage loss—and are limited primarily to the one-year

period following injury,[3] the "amount of benefit" ultimately payable on a UM/UIM claim is subject to a wide range of variables. Factors that affect the amount of benefit due on a UM/UIM claim include amounts paid on behalf of the uninsured driver, amounts paid in workers' compensation or disability benefits, and amounts that must be credited to the insurer by virtue of the insured having settled with the liable driver for less than all of the liability insurance. ORS 742.504(7). In addition, the amount of benefit is determined by amounts of other similar coverage available to the insured, the dollar limits the insured has purchased in liability coverage, and whether the insured elected in writing lower UM limits than that amount. ORS 742.502; ORS 742.504(9). Thus, if "damages due the insured" means "the amount of benefit due from the insurer," the range of potential issues would be much broader than simply the insured's "entitlement (if any)" to damages in an action against the uninsured motorist. *Cardenas* does not hold that the legislature intended the UM/UIM safe harbor to encompass such a broad range of issues.

In explaining our holding, however, we seemingly accepted the premise that "damages" means "benefits" and reasoned:

> "[I]f omitting the phrase 'amount of' was intended to indicate that a dispute about 'damages' can include any dispute that has an impact on the amount of damages, the

---

[3] ORS 742.524(1) provides that PIP benefits include the following:

"(a) All reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within one year after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person. * * *

"(b) * * * 70 percent of the loss of income from work during the period of the injured person's disability until the date the person is able to return to the person's usual occupation. This benefit is subject to a maximum payment of $3,000 per month and a maximum payment period in the aggregate of 52 weeks. * * *

"(c) If the injured person is not usually engaged in a remunerative occupation and if disability continues for at least 14 days, the expenses reasonably incurred by the injured person for essential services * * * in lieu of the services the injured person would have performed without income during the period of the person's disability * * * subject to a maximum payment of $30 per day and a maximum payment period in the aggregate of 52 weeks."

There also is a limited benefit for funeral expenses and child care.

exception to insurer liability in UM cases nearly swallows the rule; it is difficult to think of any UM claim that is not ultimately about whether the insured is entitled to damages and, if so, how much."

*Cardenas*, 230 Or App at 410.

To the extent our discussion in *Cardenas* suggests that "damages due the insured" in the UM/UIM safe harbor has the same scope as "amount of benefits due the insured" in the PIP safe harbor, we disavow that interpretation of the statute and of *Cardenas*. The holding, and real point, of *Cardenas* is that the class of issues permitted under the UM/UIM safe harbor is drawn more narrowly than the class of all issues that ultimately affect the amount the insured will recover in the UM action. We agree with that understanding of the scope of ORS 742.061(3). In reaching that conclusion, however, we emphasize that the statutory language—not *Grisby*—compels that interpretation. If the issue of "damages due" in a UM/UIM claim were so broad as to encompass all of the issues that determine the "amount of benefit due," the exception to insurer liability in UM/UIM cases would nearly swallow the rule; "it is difficult to think of any UM claim that is not ultimately about whether the insured is entitled to [benefits] and, if so, how much." *Cardenas*, 230 Or App at 410.

G. *The Issues Raised by Defendant's Pleadings*

Our determination that "damages due the insured" is a reference to the amount of damages (if any) that the insured would be entitled to recover from the uninsured motorist provides a clear answer to the remaining question. Although we agree with plaintiff that defendant's pleadings were enough to put at issue the possibility that plaintiff would recover no benefit in the UM action, the allegations raised issues only as to the damages that the insured would be entitled to recover from the uninsured motorist.

In its answer, in response to plaintiff's allegation that he sustained noneconomic damages, defendant admitted that plaintiff sustained "some" injury in the collision with the uninsured motorist but disputed "the nature and extent of [p]laintiff's alleged injuries." On its face, that allegation

disputes only the amount of plaintiff's damages. Although plaintiff contends the allegation could have permitted a determination that plaintiff is entitled to zero noneconomic damages, ORS 742.061(3) does not preclude disputes about individual categories of damages. A dispute about whether plaintiff sustained economic damages would still be a dispute regarding the amount of the damages due the insured as a result of the collision.

Next, in response to plaintiff's allegation of economic damages for medical expenses, defendant's answer disputed "the reasonableness and necessity of some of [p]laintiff's accident-related medical expenses." In response to two of plaintiff's requests for admissions, defendant similarly disputed some, but not all, of plaintiff's alleged injuries: "Admit that Plaintiff sustained 'some' injury as a result of the accident alleged in the Complaint; however, Defendant denies the nature and extent of Plaintiff's injuries" and "Admit that some of the treatment was necessary; Defendant denies the reasonableness, necessity, relatedness and extent of some of Plaintiff's treatment." Again, facially, those allegations dispute only the amount of plaintiff's damages.

Our answer is not altered by the possibility that defendant's pleadings could permit a finding that plaintiff is entitled to none of the UM benefits he sought. Plaintiff's choice to plead only a portion of his damages does not convert defendant's dispute about the extent of damages plaintiff sustained in the collision into a dispute about more than "the damages due" to plaintiff.

Affirmed.

**DEVORE, J.,** concurring.

Although reticent to say it quite so plainly, the majority holds that, in an uninsured motorist claim, an insurer may dispute, as a factual matter, that a claimant suffered *any* damages and the insurer will not be deemed thereby to have exceeded the scope of the exemption from the claimant's attorney fees under ORS 742.061(3). That is because the cause or extent of damages is a permissible dispute within the scope of the fee exemption. Plaintiff argues for something more novel. Hoping to extend the Supreme

Court's decision in *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007), plaintiff urges that, to avoid attorney fees, the insurer should admit that at least *some* damages are owed. The majority rejects that argument. In that conclusion, I concur.

I write separately, however, because the majority, to avoid the headlights of *Grisby*, veers toward the ditch when declaring that "the phrase 'damages due'" in ORS 742.061(3) refers "to what the insured could recover from the uninsured motorist, *not from the insurer.*" 276 Or App at 121 (emphasis added). As I hope to explain, the phrase necessarily refers to both considerations; the former (due from the negligent motorist) is subsumed within the latter (due from the insurer). In veering to avoid *Grisby*, the majority leaves the course of statutory analysis, does not recognize an easier answer that lies just ahead, and renders insurers, unless they would expose themselves to attorney fees, unable to mention the mathematical factors needed to arrive at the dollar figure in an arbitration award or a money judgment, which is the parties' destination. Our better choice would have been to follow the course of statutory analysis. We should put the fee exemption in ORS 742.061 in the context of terms and definitions of the statute on UM/UIM insurance at ORS 742.504.

## STATUTORY FRAMEWORK

The majority opinion drifts to the fog line at the outset. The majority begins by declaring that ORS 742.061 is "a statute that, in general, *requires* insurance companies to pay an attorney fee to an insured who prevails in an action to recover insurance benefits." 276 Or App at 116 (emphasis added). The majority speaks of the insurer's exemption from fee exposure as a "'safe harbor' from the *obligation* to pay fees." *Id.* at 116 (emphasis added). There is, however, no ordinary attorney-fee clause in ORS 742.061, as can be found in a contract or in an antidiscrimination statute. *See, e.g.,* ORS 659A.885(1) (prevailing plaintiff's recovery under discrimination statutes). There is, in ORS 742.061, no general requirement or presumptive obligation that provides for a plaintiff's recovery of fees as a matter of right.

If introduced without connotation, the statute here should be described as a statute that provides, on one hand, several conditions that may (or may not) coincide to provide a plaintiff the recovery of fees from an insurer. On the other hand, the statute provides the conditions by which certain insurers may altogether avoid plaintiff's fees. Under ORS 742.061(1), an insured may recover attorney fees if an insured makes a proof of loss, if settlement is not achieved thereafter within six months, and if the insured recovers more in court than the insurer had offered in settlement. Subsection (1) of ORS 742.061 provides:

> "Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *."

This primary provision does not guarantee a plaintiff recovery of attorney fees. Even when prevailing, a plaintiff will not recover attorney fees when damages are found to be equal to or less than the insurer's timely offer of settlement.

This statute applies generally to all classes of insurance. However, auto insurers that provide personal injury protection benefits (PIP) and uninsured or underinsured motorist benefits (UM/UIM) may avoid the potential exposure to an insured's attorney fees if, within six months of proof of loss, they accept coverage, they offer binding arbitration, and they agree that the disputable issues will be limited. In so doing, these insurers need not make a settlement offer. The conditions for this categorical exemption are described in ORS 742.061(2) and (3). Often dubbed a "safe harbor," this exemption provides that:

> "(2)  Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a)  The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration.

"(3)   Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

ORS 742.061. Whether a claim concerns PIP benefits or UM/UIM damages, the common features are that the insurer must accept coverage and be willing to engage in binding arbitration limited to the issues that determine the sum of money due. In a PIP claim, the only permitted issue for dispute would be "the amount of benefits due the insured." ORS 742.061(2)(a). In a UM/UIM claim, the only permitted issues would be "the liability of the uninsured or underinsured motorist and the damages due the insured." ORS 742.061(3)(a).

In these parallel exemptions for PIP or UM/UIM claims, there are common qualities and critical distinctions, to be explored later with case law. The obvious distinction is that a UM/UIM claim, unlike a PIP claim, involves an added but permissible issue within the bounds of the "safe harbor." It is the issue of the fault of the uninsured or underinsured motorist and, necessarily, the comparative fault of the plaintiff. Without risking exposure to plaintiff's fees, a UM/UIM insurer may contend that the uninsured or underinsured motorist was without fault, or the insurer may contend that the plaintiff's comparative fault was greater than the other driver. It is conceivable that, on some facts, the decision about fault could mean that the plaintiff could recover nothing from the insurer. It is also conceivable that the insurer might *lose* the argument about fault, yet still *not* owe any attorney fees, because fault is a permissible issue within the exemption of ORS 742.061(3)(a).

In an initial review of text, a reader must recognize that the text of the exemptions in subsection (2) and

(3) contains both similar and dissimilar terms. Unlike the majority, I would recognize the words that are similar, and I would accept, not reject, our case law that finds those words to be similar. The permissible or fee-free issue in a PIP claim involves "the amount of benefits *due the insured*," while the comparable issue in a UM/UIM claim is the "damages *due the insured*." (Emphases added.) In a PIP claim, the amount of benefits "due the insured" is necessarily to be paid by the PIP insurer, because there is no one else to pay the insured what is due under the policy. Likewise, in a UM/UIM claim, the damages "due the insured" are paid by the UM/UIM insurer because, in the UM/UIM claim, there is no one else to pay the insured what is due under the policy. The obvious should not be forgotten. An insured's UM/UIM claim is arbitrated or litigated against the insurer—not against the negligent motorist. Typically, a plaintiff's personal injury claim, if any, against the negligent motorist would be a separate, tort claim in another proceeding.[1]

This initial review of the text of subsections (2) and (3) reveals that both exemptions use the phrase "due the insured" and do so in a similar fashion. In each exemption, the common aspect of the phrases ultimately refers to the money the *insurer* will pay. Those common words, "due the insured," refer in subsections (2) and (3) to the determination of what the insurer owes the insured. Both subsections speak of a setting in which the insurer offers to allow an arbitrator to determine what the insurer owes the insured. A familiar maxim of statutory construction recognizes that the use of the same term or similar terms in a statute indicates that the term has the same meaning throughout the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (citing *Racing Com. v. Multnomah Kennel Club*, 242 Or 572, 584, 411 P2d 63 (1966)); *see also State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) ("[I]n the

---

[1] Related provisions in the statute demonstrate that the personal injury claim is something other than the UM/UIM claim. When giving notice to the UM/UIM insurer, a plaintiff may bring a claim against the offending motorist. ORS 742.504(6). With the consent of the UM/UIM insurer, the plaintiff may settle or prosecute that tort claim to judgment. ORS 742.504(4)(a). Or, acting in the name of the insured, the UM/UIM insurer may bring a subrogation claim against the offending motorist to recoup the damages that the insurer pays the insured. ORS 742.504(11).

absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently."). That conclusion, that "due the insured" means "due the insured from the insurer," should be inescapable, because, in claims against an insurer, whether for PIP benefits or UM/UIM damages, it is only an insurer who *pays* what is *"due."*

Notwithstanding the common use of the phrase, "due the insured," in subsections (2) and (3), the subsections do contain different words when referring to what money is "due the insured." Subsection (2) speaks of "benefits" in PIP claims, while subsection (3) speaks of "damages" in UM/UIM claims. In a prior decision, this court reviewed and characterized the legislative history of 1999 enactment that created the "safe harbor" of ORS 742.061(2) and (3). Or Laws 1999, ch 790, § 1. In *Cardenas*, 230 Or App at 410, this court explained that an amendment was made to the awkward Senate Bill 504 to add a more appropriate reference to PIP benefits and to do so without mention of a determination of fault, something which, of course, relates only to UM/UIM benefits. The court explained that those "housekeeping changes" were made in the bill to "conform to other PIP statutes." *Id.* at 411. Subsection (2) refers to "benefits" as to PIP, while subsection (3)(a) refers to "damages" as to UM/UIM, because those are the terms used in their respective authorizing statutes, which govern those respective forms of automobile insurance. *Id.* In making that legislative review, *Cardenas* is important. By recognizing that the differing terms "benefits" and "damages" were drawn from the context of their source statutes, *Cardenas* points the direction for statutory analysis: It is straight ahead to the source statutes.

If this court were to look to the source statute for UM/UIM insurance, the court would find the context that would define "damages due the insured" as that sum of money that is owed by the insurer. Subsection (3) of ORS 742.061 uses the term "damages" itself because "damages" is the term used in ORS 742.504, the statute that mandates UM/UIM insurance in motor vehicle polices. The same provision tells what is "due." ORS 742.061(3)(a). That core

provision contains the equivalent of an insuring clause in the model, mandated, minimum policy. In relevant part, it provides:

> "[T]he *insurer will pay* all sums that the insured, the heirs or the legal representative of the insured is legally entitled to recover *as general and special damages* from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the uninsured vehicle. \* \* \*."

ORS 742.504(1)(a) (emphasis added). In simpler words, the UM/UIM insurer pays the damages.[2]

Leaving no doubt about its meaning, the statute goes on to provide a definition of the key phrase in the heart of the insuring clause. This is the phrase describing what is "due" to the insured. In ORS 742.504(2)(j), the statute provides the definition of this phrase, using several components:

> "'Sums that the insured, the heirs or the legal representative of the insured is legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle' *means* the amount of *damages* that:
>
> "(A) A claimant could have recovered in a civil action from the owner or operator at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses;
>
> "(B) Are calculated without regard to the tort claims limitations of ORS 30.260 to 30.300; *and*
>
> "(C) Are no larger than benefits payable under the terms of the policy as provided in subsection (7) of this section."

---

[2] This is the same as it is with the insuring clause of motor vehicle liability policies. There, too, the liability policy of the negligent driver pays the sums that are the damages. To illustrate the similarity here, we may consider a sample quotation from a liability policy:

> "'(Insurer agrees to) pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.'"

*Oakridge Comm. Ambulance v. U. S. Fidelity*, 278 Or 21, 23, 563 P2d 164 (1977) (quoting liability policy (italics omitted)).

(Emphases added). With that multi-part definition, the statute provides that the "sums" that "the insurer will pay" are the "damages" that the insured could have recovered as "damages" against the negligent motorist. The majority recognizes only this much. But, it is also part of this statutory definition that the payable "damages" are calculated without reference to tort claims limitations that might arise if a government vehicle were the negligent and underinsured vehicle. ORS 742.504(2)(j)(B). And, it is also part of that same definition that the "sums" or "damages" that the insurer "will pay" are calculated considering the several specific, listed, factual, mathematical factors in ORS 742.504(7).[3] These latter components of the statutory definition are ones that the majority ignores, tacitly rejects, or effectively forecloses.

As reflected in the fee statute, the insuring clause, and the key definition, the primary referent is the sum of "damages" that the insured "could have recovered" in a hypothetical personal injury claim. ORS 742.504(1)(a) (insuring clause); ORS 742.504(2)(j)(A) (definition of damages due). As such, a UM/UIM claim is a case-within-a-case. Consequently, any defense that would be permissible in a personal injury claim is a permissible defense within a UM/UIM claim.

Most importantly for this case, ORS 742.504(2)(j)(A) defines the sum that the insurer pays as "damages" as the "damages" that the insured could have recovered in a civil action from the negligent motorist *after* determination of fault or comparative fault *and resolution of any applicable defenses.*" (Emphases added.) This text is what lies ahead in statutory analysis, if we look beyond ORS 742.061(3) for

---

[3] First among several factors, the "sums" or "damages" that the insurer will pay can be no more than the maximum UM/UIM policy limit, ORS 742.504(7)(a). And, in an *under*-insured motorist claim, the "sums" or "damages" that the UIM insurer will pay are determined after consideration of the damages paid by the negligent motorist (*e.g.*, the negligent motorist's liability insurance in a UIM claim), ORS 742.504(7)(b), (c)(A). Also, the "sums" or "damages" that the insurer will pay are to be reduced by damages paid by certain collateral source such as workers' compensation. Those factors in subsection (7), are cross-referenced and incorporated within the definition of damages in paragraph (2)(j). They are mathematical matters necessary to determination of an award or judgment. As discussed later, they are not invitations to dispute coverage.

context and embrace ORS 742.504(2)(j) as context. That definitional provision makes express what is logical. It explains part of what is implicit in the phrase "damages due" in ORS 742.061(3).

Among the "applicable defenses" that a defendant could assert in a personal injury claim is the ordinary denial of plaintiff's allegation that the accident was the *cause* of the injury, a denial of the *extent* of injury, or a denial of the *reasonableness* of medical bills. Such ordinary defenses could result in a determination that an accident was not the cause of injury, that preexisting conditions were instead the cause of treatment, or that the bills were not proven to be reasonable. *See, e.g., Pinkerton v. Tri-Met,* 203 Or App 525, 125 P3d 840 (2005) (reversing judgment for plaintiff because expert testimony, which was lacking, was required for recovery of damages).

Because ORS 742.504(1)(a) and (2)(j) provide that the insurer pays "the amount of *damages*" determined "after" the "resolution of *any applicable defenses*," disputes about causation, the extent of injury, or the reasonableness of medical bills remain permissible issues within the scope of determination of "damages" and within the scope of the fee exemption of ORS 742.061(3)(a). In this way, the term "damages due" for purposes of a UM/UIM claim *is* different from "benefits due" for purposes of a PIP claim, because a PIP claim is a no-fault claim without consideration of the range of defenses available to a defendant motorist. That distinction becomes significant when understanding case law.

## CASE LAW

Plaintiff weaves his argument from two cases. The first is a distinguishable PIP case, which he seeks to extend with help from a UM case. Based on the PIP case *Grisby*, plaintiff asserts as an initial premise that, although a PIP insurer remains safely within the fee exemption if disputing the quantum or "amount of benefits," the PIP insurer improperly inserts an additional issue and forfeits the exemption, when wholly denying all benefits.

Based on the UM case, *Cardenas*, 230 Or App at 410-12, plaintiff asserts a second premise that, although

ORS 742.504(2) and (3) use somewhat different language when referring to the "amount of benefits due the insured" and the "damages due the insured," this court has appeared to construe them to mean the same thing.

Plaintiff concludes that *Grisby* should extend to UM/UIM claims so as to require that a UM/UIM insurer forfeit the "safe harbor" when alleging any argument that might result in an award of *no* damages. "Thus 'safe harbor' relief," says plaintiff, "is available only when the insurer concedes that at least *some* amount of benefits is due its insured." (Emphasis added.) In plaintiff's view, any allegation or defense that could result in an "'award of zero' is not a dispute over the 'amount' due the insured, but instead raises [an additional, impermissible] issue of *whether* any amount of UM benefits are owed." (Emphasis in original.) Because Progressive admitted "that Plaintiff sustained 'some injury' but disputed 'the nature and extent of plaintiff's alleged injuries,'" plaintiff contends, the allegation permitted a zero recovery and should cause Progressive to forfeit the fee exemption of ORS 742.061(3). Read properly, neither *Grisby* nor *Cardenas* go so far.

In *Grisby*, the insured brought a claim for the unpaid portion of PIP benefits. The insurer had denied payment for certain chiropractic treatment, asserting that the treatment was not causally related to plaintiff's accident. 343 Or at 177. In salient part, the issue on appeal was whether a dispute about the causal connection between the accident and medical bills was a permissible dispute about the "amount of benefits." *Id.* at 180. The court rejected the insurer's contention that "a payment of zero for the chiropractic treatment" was a permissible dispute about the "amount" of PIP benefits. The insurer had argued zero was an amount. The court rejoined that, if any zero result were permissible as "an amount" disputable within the fee exemption, then every coverage denial would seem to be permissible within the fee exemption, because coverage denials also pose a zero result.[4] *Id.* at 182. Because the insurer denied any of the

---

[4] The court seemed to treat the threat of a zero result from a *factual* failure to prove that a bill for medical treatment was reasonably related to an accident as equally impermissible as a *coverage* denial that would produce a zero result.

disputed benefits were recoverable, the court declared that the insurer had inserted an additional, impermissible issue that would preempt determination of the "dollar level" or the "amount of benefits." *Id.* at 183. The added issue—that particular bills were not causally related to the accident—was not within the permissible scope of a PIP dispute, which was restricted to the amount of benefits for purposes of the fee exemption of ORS 742.061(2).[5]

This court's decision in *Cardenas* had a certain parallel in logic with *Grisby*. In *Cardenas*, the plaintiff brought a claim for UM benefits, and the insurer responded by asserting that it had previously procured from the plaintiff a release of claims. 230 Or App at 405. She did not speak English and was not represented by counsel when giving a release in exchange for $800. *Id.* The insurer sent a "safe harbor" letter offering to arbitrate fault and damages, but the circuit court awarded her attorney fees. *Id.* at 406-07.

The defendant appealed, contending that its release defense was a permissible dispute within ORS 742.061(3), because the release was a permissible defense about "damages" when asserting that nothing was due. To distinguish *Grisby*, the insurer argued that *Grisby* concerned only PIP where "the amount of benefits" meant one thing, but, in a UM claim, "damages" meant something different— something that permitted a *legal* defense against any and all damages.

On both points, this court disagreed. This court concluded, like the Supreme Court, that to argue that *any* defense that results in zero recovery should be permissible as a matter of "damages" was an argument that proved too much. Simply to say "zero" is an amount, or to say that anything that produces "zero" should be permitted, would allow any coverage defense that results in "zero," despite the

---

[5] Although an insurer should be able to safely dispute the reasonableness and necessity of medical bills in a PIP claim, *see* ORS 742.524(1)(a) (providing for payment only of "reasonable and necessary" bills for medical services), while still remaining within the fee-free exemption of ORS 742.061(2), the court deemed the insurer's denial that the bills were caused by the accident to be an impermissibly added issue. That anomaly is beyond the scope of the fee issue in the UM/UIM claim presented here. Moreover, that anomaly is beyond the authority of this court to reconcile.

mandate that the insurer must accept coverage to qualify for fee exemption. *Cardenas,* 230 Or App at 410.

In light of legislative history, this court concluded that subsections (2) and (3) were similar in scope. Although the subsections used different words—"benefits" and "damages" —to be consistent with their source statutes, they also used similar terms. These parallel subsections were alike insofar as they did not intend to import into either provision *legal* defenses that wholly prevented the ordinary consideration of the extent of "benefits" or "damages" as should be determined according to their respective authorizing statutes. *Id.* at 411. This court rejected the insurer's interpretation that the legislature intended the exemption from fees in a UM claim to have "a radically different scope" than that of the exemption for PIP claims.[6] *Id.* at 412.

Contrary to the majority's summary of the case, "[t]he holding, and real point, of *Cardenas*" was *not* that "issues permitted under the UM/UIM safe harbor is drawn more narrowly" than factual calculations that "ultimately affect the amount the insured will recover in the UM action" from the insurer. 276 Or App at 127. In truth, *Cardenas* did not consider the definition of "damages due the insured" in light of the statutory context of the source statute at ORS 742.504(1) and (2)(j).

The "real point" in *Cardenas,* as the decision itself declared, was that the insurer's release defense would have preempted consideration of damages. That was further parallel with *Grisby. Grisby* had recognized that, "[o]nly after the trier of fact had agreed with plaintiff on *that* preliminary issue [denial of causation] could it turn to the issue of the *amount* of benefits that plaintiff should receive under the policy." 343 Or at 183 (emphases in original). Similarly, in *Cardenas,* only after the factfinder had agreed with the plaintiff to disregard the release could the factfinder turn to the question of damages in the UM claim. 230 Or App at 412.

---

[6] The majority need not have gone further to explain *Cardenas.* The majority did not need to suggest that this court erred in recognizing that subsections (2) and (3) of ORS 742.061, while using different text, are of similar purpose. *Compare Spearman,* 276 Or App at 116, 125, *with Cardenas,* 230 Or App at 410-11 (construing provision terms alike).

The problem was that the release defense was a complete *legal* defense that would have prevented a factfinder from reaching the issue of damages. It was not a factual defense inherent in the determination of damages. Therefore, that legal defense was not a determination of "damages" within the scope of the fee exemption of ORS 742.061(3).

When considered carefully, *Grisby* and *Cardenas* do not assist plaintiff. *Grisby* concerned the determination of "the amount of benefits" due from the PIP insurer as a matter of first-party insurance that provides benefits without regard to fault of another party and, seemingly, without regard to a causal connection between accident, injury, or bills when the insurer has accepted coverage. *Grisby* involved the determination of benefits assured by the statutory scheme of ORS 742.518 to 742.544. *Grisby* did not consider the meaning of "damages" as that term is used within the scheme of uninsured and underinsured motorist insurance of ORS 742.502 to 742.504.

Although UM/UIM insurance is likewise a matter of first-party coverage, it is insurance that pays the damages an insured suffers due to the negligence of an uninsured or underinsured motorist. The statutory scheme determines the sums that the UM/UIM insurer pays with reference to the "damages" to which the injured insured should be entitled to in a hypothetical case-within-a-case against the motorist without enough insurance. ORS 742.504(1)(a). Specifically, ORS 742.504(2)(j)(A) defines the sums that the insurer pays to mean "the amount of damages" as determined principally by that case-within-a-case "after determination of fault or comparative fault and [the] resolution of any applicable defenses." That provision, ORS 742.504(2)(j), serves as a definition of "damages due the insured" as found in ORS 742.061(3)(a). When dealing only with a no-fault PIP claim, *Grisby* did not consider the distinct, statutory definition of payable "damages" in ORS 742.504(2)(j). For that simple reason, *Grisby* is distinguishable. No drastic maneuver is needed to avoid *Grisby*.

Contrary to plaintiff's assertion, in *Cardenas*, this court did not construe the specific terms "benefits" and "damages" themselves, nor construe them to be synonymous.

When the decision recognized that ORS 742.061(2) and (3) retain different terms, "benefits" and "damages," to correspond with their authorizing statutes, the decision permits recognition of a difference in character of those terms. Necessarily, PIP benefits and UM/UIM damages are determined differently. *Cardenas* could not extend *Grisby* so as to change the way in which damages are calculated under the permissible terms of UM/UIM insurance.

In order to determine the damages that an insured has suffered and, ultimately, the damages that the insurer shall pay, the insured must prove liability and damages. ORS 742.504(1), (2)(j)(A). As in any ordinary personal injury case, the question of fault could mean that the insured recovers nothing, because the other motorist is without fault or with fault less than the insured's comparative fault. Likewise, the question of damages could mean that the insured recovers nothing, because the insured's proof of injury, causation, or damages fails. *See, e.g.*, ORS 31.710(2)(a) (economic damages are those that are "economically verifiable"); *see also Pinkerton*, 203 Or App at 534 (expert testimony needed).

The function of UM/UIM insurance is to see that a claimant is "placed in the same position—no better and no worse—than he or she would have occupied had the responsible party been insured." *Vega v. Farmers Ins. Co.*, 323 Or 291, 306, 918 P2d 95 (1996). If plaintiff's argument prevailed here, however, plaintiff would become entitled to more than that which he could have been entitled in a claim against the uninsured motorist. He would be guaranteed a recovery. Yet, in a tort claim against an uninsured motorist, a plaintiff could suffer a zero outcome either in an adverse determination of fault or in a failure of proof of damages. Contrary to plaintiff's argument, the "safe harbor" of ORS 742.504(3) does not guarantee a recovery, nor require that the UM/UIM insurer concede that plaintiff is owed something.

## THIS CASE

In this case, Progressive did not assert an issue that was beyond the bounds of determination of the "damages" that it owed plaintiff. Progressive admitted that it had issued a policy of auto insurance to plaintiff, that plaintiff's

Mercedes Benz was an insured vehicle under the policy, and that plaintiff's car was struck by an uninsured motorist. Progressive admitted "that plaintiff sustained 'some' injury as a result of the alleged accident, but disputed 'the nature and extent of plaintiff's alleged injuries.'" Progressive admitted "that Plaintiff submitted some accident-related medical expenses" but denied "the reasonableness and necessity of some of plaintiff's accident-related medical expenses." Progressive's responses to plaintiff's requests for admission were similar.

Plaintiff alleged that Progressive's policy provided PIP benefits, and, accordingly, he sought only the "unreimbursed accident-related medical expenses." On appeal, he acknowledges that the economic damages in a UM claim are reduced or are "less that portion of those bills that Progressive had paid pre-suit under its PIP coverage." If plaintiff had not chosen to fashion his claim in that way, ORS 742.542 would have accomplished the same result, in light of the modest damages determined, because those PIP benefits would have served as a prepayment, credit, or offset against UM damages.[7] While making a clever use of *Grisby*, plaintiff's choice to plead only *unpaid* economic damages should not make it appear that an insurer had denied all damages. As plaintiff acknowledged, the insurer had paid some accident-related damages, including some that would be treated as damages in a UM/UIM claim if plaintiff had chosen to plead all damages suffered.

In this case, Progressive did not actually deny all damages, and it would not have mattered if it had done so. Determination of damages means determination of the "sums" that the insurer "will pay" as "the amount of

---

[7] Assuming that the amount of damages does not require stacking of UM/UIM limits with PIP limits to pay damages, PIP serves as an offset against UM/UIM damages. ORS 742.542 provides:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits."

*See also Farmers Ins. Co. v. Conner*, 219 Or App 337, 182 P3d 878 (2008) (explaining when stacking is required to pay damages).

damages that" plaintiff could prove "after" determination of fault "and resolution of any applicable defenses" that an uninsured motorist could have asserted. ORS 742.061(3); ORS 742.504(1)(a); ORS 742.504(2)(j). Because an uninsured motorist could have disputed "the nature and extent of plaintiff's alleged injuries," it did not matter that Progressive did so. Progressive's questions about damages were permissible within the scope of ORS 742.061(3).

Plaintiff admitted that Progressive had sent him a letter conforming to the requisites of ORS 742.061(3), offering binding arbitration in lieu of litigation, and committing to restrict the arbitrable issues to the determination of fault and damages. Progressive did not exceed the bounds of the "safe harbor." Therefore, the trial court did not err in denying plaintiff's exception to the arbitrator's award denying plaintiff's request for recovery of attorney fees.

## A NERVOUS SWERVE

My disagreement with the majority does not lie in that ultimate conclusion but with the majority's opinion that "damages due the insured" refers exclusively to the damages caused by the uninsured motorist and does not refer equally to the factors that determine what damages are "due" the insured. I suggest that the factor involving damages caused by the offending motorist is only the first of several factors in ORS 742.504(2)(j). The remaining factors can be just as necessary to determine what is "due" in an arbitration award or money judgment.

At least one of the factors is to the distinct benefit of the insured. The definition of payable damages requires that the calculation of damages *exclude* consideration of any tort claim limit that might otherwise handicap an insured's UM/UIM recovery if the insured is injured by a government employee. ORS 742.504(2)(j)(B). That is because the insured is entitled to the full benefit of the policy—without regard to any lesser government tort claim limit.

By the same token, the definition of "damages due" requires that damages be limited by that which is "payable under the terms of the policy as provided in subsection (7)" of ORS 742.504. ORS 742.504(2)(j)(C). Those are several,

specific, limited, factual, mathematical matters. Whether they are relevant in a particular case depends on the circumstances, but, when they are, they are no less relevant than determination of the damages suffered, because they tell what damages are due.

First among them, there can be no greater damages due the insured than the "each person" or "each accident" limit provided by the policy. ORS 742.504(2)(j)(C) (definitional link); ORS 742.504(7)(a) (policy limit). Regardless what greater damages might be recoverable against the uninsured or underinsured driver, an insured cannot be paid more damages from the UM/UIM insurer than the policy provides. The insurer's pockets can be no deeper than the limit of the policy that the insured chose to buy.

In the case of an *underinsured* motorist claim, where the offending motorist pays the initial damages with his or her own liability insurance, the remaining portion of damages due the insured from the UIM insurer is calculated by first applying the liability proceeds to partial satisfaction of the total damages suffered. ORS 742.504(2)(j)(C) (definitional link); ORS 742.504(7)(c)(A) (subtracting tortfeasor's payments at the time of this claim); *see Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 179 P3d 633, *adh'd to as modified on recons*, 345 Or 373, 195 P3d 59 (2008) (recognizing under then extant statute that liability proceeds are subtracted from damages to determine UM/UIM award). *But see* Or Laws 2015, ch 5, § 3 (eliminating subtraction of liability proceeds from UM/UIM policy limits in claims subsequent to 2015 act with regard to liability proceeds received). A claimant is not entitled to damages being paid twice.

Similarly, the calculation of damages due the insured is also made in light of damages already paid by specific collateral sources such as workers' compensation. ORS 742.504(2)(j)(C) (definitional link); ORS 742.504(7)(c)(B) (specific collateral source subtraction). These, too, are damages that are not paid twice.

These factual matters necessarily presuppose that there is no bona fide dispute between insured and insurer over coverage issues such as the amount of the UM/UIM per person policy limit or such as the presence of policy

language authorizing such calculations. In the context of ORS 742.061(3), the recognition of these mathematical realities—like the policy limit—must be *undisputed.*[8] That follows because, in order to qualify for the fee exemption, the insurer is required to have "accepted coverage." ORS 742.061(3)(a). And, that follows because *Grisby* rightly instructs that, except for the permissible issues—which are fault and damages in a UM/UIM claim—the insurer cannot interject additional issues. These mathematical factors do not provide back door access for an insurer to dispute coverage.

The majority opinion rejects the suggestion that *all* of ORS 742.504(2)(j) should inform the meaning of "damages due the insured" as used in ORS 742.061(3). 276 Or App at 125-26. But it is revealing that the majority has no way to attribute the *benefit* of the disregard of tort claim limits when calculating damages "due" unless we *do* make reference to the component definition in ORS 742.504(2)(j). In good conscience, we should not arbitrarily and solely refer to damages caused by the offending motorist in ORS 742.504(2)(j)(A) without making equal reference to the disregard of tort claim limits in ORS 742.504(2)(j)(B) *and* to the recognition of policy limits or subtractions in ORS 742.504(2)(j)(C) (incorporating ORS 742.504(7)).

The majority fears that, if damages due the insured meant what the insurer must pay, then the range of issues would be broadened to more than the damages recoverable against the offending motorist. It fears disputes over the priority of payment or the amount of other UM benefits available under other policies, ORS 742.504(9), and it fears arguments whether the insured properly purchased lower UM limits than liability limits, ORS 742.502. 276 Or App at 125-26. Such disputes, however, should not be confused with the mathematic factors in the definition of payable damages in ORS 742.504(2)(j)(C) (incorporating ORS 742.504(7)). Those feared things are classic coverage disputes, the likes of which the insurer must have agreed to avoid in the first

---

[8] Needless to say, if a dispute over a policy limit *does* exist, it should be in good-faith (ORCP 17; ORS 20.105), and it should not be a contrivance to force the appearance of a coverage dispute only for purposes of frustrating the insurer's exemption from attorney fees under ORS 742.061(3).

place in order to claim the fee exemption of ORS 742.061(3). All manner of coverage disputes are not invited simply by recognizing the factual calculations that are inherent in the determination of an arbitration award or money judgment.

The majority reasons that to view ORS 742.504(2)(j) as providing a definition of "damages due the insured" in ORS 742.061(3) would somehow result in duplication and meaningless use of "fault" in one place if "fault" were already implied in "damages." The majority invokes the canon of construction against interpreting a provision to make part meaningless. 276 Or App at 121. That canon, however, is not apt, and the effort to employ it is strained. Both provisions— the fee exemption at ORS 742.061(3) and the source statute at ORS 742.504—describe the determination of what is *"due."* The majority does not appreciate that the source statute at ORS 742.504 is defining not just "damages" but what damages are "due." Both statutes describe what is "due" in terms of both fault and damages. No words are truly made duplicative, useless, or meaningless. The statutes are rightly parallel; taken together, they do not result in meaningless, duplicative terms. If anything, the fact that the statutes both repeat the need to determine fault and damages shows that the two statutes *are* linked, rather than unrelated as the majority suggests.

Even if the statutes are inartfully drafted, drafters are human, and statutes that are drafted at different times, such as ORS 742.061 and ORS 742.504, will sometimes result in redundancy. In the repetition of terms, the legislature's purpose was clarity. It is easy to imagine what confusion would have ensued if drafters had written ORS 742.061(3) to say that the permissible, limited issue in UM/UIM claims was just "damages due," while assuming that contentious litigants would turn ahead to ORS 742.504(2)(j) to recognize that "damages due" there necessitates determination of fault, as well. Some litigants would have argued that a dispute about fault would expose an insurer to attorney fees because fault was not mentioned in ORS 742.061(3). The legislature said both things in both places simply to be clear.

The Supreme Court has observed that redundancy is sometimes intended. The court stated:

"We wish to be clear that the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal. Redundancy in communication is a fact of life and of law. *See, e.g., Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 396-97, 737 P2d 595 (1987) (noting that legal terminology often is redundant, 'sometimes for clarity, sometimes for emphasis'). *In some cases, it may be what the legislature intended. See, e.g., Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008) ('[N]othing prohibits the legislature from saying the same thing twice * * *.')."

*State v. Cloutier*, 351 Or 68, 97-98, 261 P3d 1234 (2011) (emphasis added). In this case, the interpretative cannon is sorely misapplied because it is employed to reject the statutory context that tells expressly what "damages" are "due."

In the end, the majority rejects the definition of "damages due," as provided by ORS 742.504(2)(j), because, by attempting a distinction between payment of "damages" and the payment of "benefits," the majority steers wide of *Grisby*. But that effort is unnecessary because *Grisby* is not in our lane of travel. *Grisby* did not deal with a UM/UIM claim involving "damages due" in ORS 742.061(3), let alone the lengthy definition of what is "due" as provided in ORS 742.504(2)(j).

To insist that "damages due" cannot mean the damages payable by the insurer does real harm. The problem with the majority opinion is that, if "damages due" does not include reference to damages due from the insurer, then the insurer cannot safely make reference to the mathematical factors necessary to calculate an arbitration award or money judgment—at least not without risking or incurring plaintiff's attorney fees. An insurer who pleads as an affirmative defense that it can pay no more than its policy limit of $50,000 or $100,000, could be seen to interject an impermissibly added issue other than fault and damages due from the offending motorist.[9] The insured and insurer might never have disputed the policy limit or policy terms.

---

[9] For the same reason, an insurer would dare not plead as an affirmative defense any of the legitimate, factual matters that would reduce the damages due by that recognizing the damages that have already been paid. *See* ORS 742.504(7)(c) (application of other payments to damages).

The insurer may have raised no issue other than the pragmatic, factual matters necessary to calculate the damages due as provided in ORS 742.061(3) and ORS 742.504(2)(j). Yet, the majority's narrow interpretation of "damages due" as a reference only to the offending motorist, would wrongly impose attorney fees on an insurer who had accepted coverage and limited disputed issues to fault damages due the insured from the insurer while raising no coverage issue whatsoever. The majority leaves insurers in uncertainty about how to respond—especially to a plaintiff who makes creative use of pleadings and requests for admissions to get the insurer in trouble on fees.

If our interpretation of these statutes does not permit an insurer, without jeopardy of attorney fees, to plead what is due from the insurer in the way that payable damages are defined in ORS 742.504(1)(a) and ORS 742.504(2)(j), then logically an arbitrator and court cannot calculate the dollar figure needed for an arbitration award or money judgment. If, without jeopardy of attorney fees, an insurer cannot make reference to undisputed policy limits or to proper application of prior payments of damages, then, in many cases, we have frustrated the ability of an arbitrator or a court to arrive at the number needed to make an arbitration award or enter a money judgment. If this is true, then something is wrong with our interpretation of these statutes.

## CONCLUSION

Commendably, the majority declines plaintiff's demand that an insurer must guarantee plaintiff payment of some damages in every UM/UIM case in order that the fee exemption of ORS 742.061(3) might apply. In that conclusion, I concur. But, I respectfully disagree with the majority's analysis that rejects statutory context, creates unnecessary uncertainty, and, without permissible reference to ORS 742.504(2)(j), seems to leave the parties, arbitrators, and judges unable to calculate what "damages" are actually "due the insured."